In the Matter of the Accounting of BROOKLYN TRUST COMPANY, as Trustee under the Will of THEODORE F. JACKSON, Deceased, Respondent.

STEWART M. NEFF, as Executor of CORNELIA B. JACKSON, Deceased, Appellant; JOSEPH H. JACKSON et al., Respondents.

(Argued November 16, 1931; decided January 12, 1932.)

*Robert H. Wilson* for appellant. The will of deceased clearly shows that the sole object of his care and solicitude was his wife. (*Woodward* v. *James,* 115 N. Y. 346.) The dividend declared by the Vandervoort Realty Company was income payable to the widow. (*Matter of Enz,* 204 App. Div. 634; 237 N. Y. 577; *Matter of Langdon,* 139 Misc. Rep. 379; *Matter of James,* 78 Hun, 121; 146 N. Y. 78; *Clarkson* v. *Clarkson,* 18 Barb. 646; *Reed* v. *Head,* 88 Mass. 174; *Matter of Thomson,* 153 Penn. St. 332; *Matter of Oliver,* 136 Penn. St. 43.) The decree of the Surrogate of Suffolk county construing the will of deceased as to his unproductive real estate is *res judicata.* (Surr. Ct. Act, §§ 80, 274; *Matter of Sternfels,* 133 Misc. Rep. 565; *Matter of Bermuth,* 127 Misc. Rep. 705; *Hull* v. *Hull,* 225 N. Y. 342; *Reynolds* v. *Reynolds,* 224 N. Y. 429; *Matter of Schley,* 202 App. Div. 169; 234 N. Y. 616; *Matter of Stewart,* 88 App. Div. 23; *Phalen* v. *U. S. Trust Co.,* 100 App. Div. 264; *Matter of Goldsticker,* 192 N. Y. 35; *Matter of Gargiulo,* 138 Misc. Rep. 90; *Matter of Moran,* 136 Misc. Rep. 615; *Loeb* v. *Hasslacher,* 209 App. Div. 58; *Demuth* v. *Kemp,* 159 App. Div. 422; *Matter of Howard,* 46 Misc. Rep. 204; *Jewett* v. *Schmidt,* 45 Misc. Rep. 34; 108 App. Div. 322; 184 N. Y. 608; *Pray* v. *Hegeman,* 98 N. Y. 351; *Brown* v. *Wheeler,* 53 App. Div. 6.) It was clearly the intention of deceased that his widow should receive an income from the unproductive real estate. (*Lawrence* v. *Littlefield,* 215 N. Y. 561; *Spencer* v. *Spencer,* 219 N. Y. 459; *Furniss* v. *Cruikshank,* 230 N. Y. 495.)

*Albridge C. Smith* and *Boyd L. Bailey* for Joseph H. Jackson et al., respondents. The extraordinary cash dividend declared by Vandervoort Realty Company out of the proceeds of the sale of the greater part of its

real estate was a distribution of capital and was properly awarded to the principal of the trust. (*McLouth* v. *Hunt*, 154 N. Y. 179; *Matter of Osborne*, 209 N. Y. 450; *United States Trust Co.* v. *Heye*, 224 N. Y. 242; *Thayer* v. *Burr*, 210 N. Y. 155; *Riggs* v. *Cragg*, 26 Hun, 89; *Stewart* v. *Phelps*, 71 App. Div. 91; 173 N. Y. 621; *Equitable Trust Co.* v. *Prentice*, 250 N. Y. 1; *Miller* v. *Payne*, 150 Wis. 354; *Matter of Humbird*, 114 Md. 627.) No part of the proceeds of sale of the unproductive real estate should be apportioned to income. (*Matter of Albertson*, 113 N. Y. 434; *Yates* v. *Yates*, 28 Beav. 637; *Matter of Marshall*, 136 Misc. Rep. 116.) The decree on the intermediate accounting was not an adjudication of anything not embraced in the accounting and the present matter is not *res judicata*. (*Brinkley* v. *Brinkley*, 50 N. Y. 184; *Webb* v. *Buckelew*, 82 N. Y. 555; *Rudd* v. *Cornell*, 171 N. Y. 114; *Bowditch* v. *Ayrault*, 138 N. Y. 222; *Matter of Hoyt*, 160 N. Y. 607; *Megrue* v. *Megrue*, 231 App. Div. 245; *Central Trust Co.* v. *Falck*, 177 App. Div. 501; *Kirk* v. *McCann*, 117 App. Div. 56.)

*Ralph W. Crolly* for Brooklyn Trust Company, respondent.

POUND, J.  Theodore F. Jackson was a lawyer of standing and experience.  He drew a will when he was eighty-one years of age which he executed on February 11, 1911, and a codicil thereto which he executed on February 14, 1913.  He died June 18, 1913.  He left a gross estate of upwards of $850,000.  His wife, Cornelia B. Jackson, survived him.  She was then seventy-six years of age.  She died, fifteen years later, on October 1, 1928.  His nearest relatives were nephews and nieces.

By his will and the codicil thereto Mr. Jackson gave his wife his real and personal property at Southampton, Long Island, $150,000 in money and 160 shares of his stock in the Vandervoort Realty Company, " which shares," says the will, " I recommend her to retain and

hold during her life." After giving some minor legacies he left the residue of his estate in trust to the Long Island Loan and Trust Company (now Brooklyn Trust Company), " to receive the rents, profits and income thereof and pay over the same to my beloved wife during her natural life." After the decease of his wife he directed the payment of the remainder of his estate to collateral relatives. He authorized his trustee to sell and dispose of all his real estate held by it' in trust, for the purpose of making a final distribution of the residuary estate. He also authorized it in its discretion to sell at any time any of his unproductive real estate and convert the same into money and invest the proceeds. Similar language has been held to indicate an intention of the testator to constitute an imperative power of sale and an equitable conversion of the real estate into personalty at his death. (*Lawrence* v. *Littlefield*, 215 N. Y. 561.)

His widow had at the time of his death property of her own of the value of more than $86,000. She took under the will property of the value of upwards of $200,000. The trust estate consisted approximately of

| | |
|---|---|
| Personal property | $280,000 00 |
| Income-producing real estate | 67,036 71 |
| Unproductive real estate | 195,053 29 |
| Total | $542.090 00 |

During the life of the trust the prevailing rate of interest on bonds and mortgages was from five to six per cent, but the income of the widow from the trust estate was much less than that amount.

The Vandervoort Realty Company was incorporated in 1906 with a capital of $187,000, primarily to hold title to a large tract of vacant and unimproved property in Brooklyn which was purchased by Mr. Jackson and other coadventurers in the hope of making a profit on its resale. The corporation was also authorized by the certificate of

incorporation to lease, develop and manage the property. Mr. Jackson received 660 shares of the stock which he held at the time of his death. The trustee sold 40 shares, leaving 460 shares in the trust fund of the appraised value of $71,300. The widow's estate claims a dividend of 100% paid by this company in 1927 as " profits " of the trust estate. The dividend was declared on the surplus earnings and paid from the proceeds of an advantageous sale of a large portion of the land of the company to the Long Island Railroad Company in 1927, immediately before the dividend was declared. The courts below have held that the dividend was capital and not income.

At the time of his death, Mr. Jackson owned valuable unproductive real estate which went into the trust fund from which no income was received. Of this the larger part was sold by the trustee. All the carrying charges on this property, which is a substantial part of the trust estate, were prior to the sale thereof charged against principal, pursuant to a decree of the Surrogate's Court made in 1915, but on the final settlement of the account of the trustee the courts have denied the claim of the widow's executor that the life tenant was privileged to receive as delayed income a portion of the sale price to be ascertained as provided in Lawrence v. Littlefield (supra). (See, also, Matter of Pinkney, 208 App. Div. 181; affd., 238 N. Y. 602.)

The questions that arise on this appeal have to do with the conflicting claims of the remaindermen and the life tenant.

1. As to the dividend declared by the Vandervoort Realty Company.

2. As to the carrying charges of the unproductive real estate.

The wife was doubtless the nearest and dearest object of the testator's solicitude. For her benefit he recommended to her that she retain and hold during her life

the shares in the realty company that he left to her out-
right. The court looks into the real nature and substance
of things with that fact in mind and construes the will
without slavish deference to mere names or forms
employed by the testator or to labels attached to the
corporate organization and its acts. If the will does not
express the intention of the testator in so many words,
the court will give a fair and reasonable construction to
the words which he uses to effectuate his intention. In
so doing we may perhaps seem to endow him with
prescience that he did not possess by assuming that he
did possess it. The declared intention of the corporation
was to pay the dividend " out of the surplus earnings
of the company." Doubtless Mr. Jackson, if living,
would have regarded the dividend as profit on the sale
of the real estate. Doubtless he gave to his wife all the
" profits " from the trust estate. Doubtless the corpoi ate
capital remained unimpaired after the dividend was
declared. How shall we construe the will with these
facts in mind?

The right of life tenant and remainderman to dividends
on corporate stock arising out of the sale of lands by
a corporation organized to buy and sell lands and to con-
duct farming operations was considered in *Matter of Enz*
(204 App. Div. 634; affd., 237 N. Y. 577). It was there
held that cash dividends made up in part from the sale
of lands came from the primary source of corporate
income and that, so long as the capital remained
unimpaired, they belonged to the life tenant.

The rule applied in the *Enz* case was stated as an
exception to the general rule that dividends representing
increased value of the investments of the corporation are
to be considered as a distribution of capital and belong
to the remaindermen. (*Thayer* v. *Burr*, 201 N. Y. 155.)
Shall the rule or the exception be applied in this case?

When corporations which are organized to take title
to unproductive real estate as here, " to make it pos-

sible to dispose of the said property readily at any time," distribute the moneys arising from a sale in the ordinary course of business as a cash dividend, they are distributing income and not dividing capital. The income is derived from the increment in value which makes a sale profitable. Such is the gist of the holding in *Matter of Enz* (*supra*). The distinction, if any, between that case and the one before us rests on no conflict of legal principles. The facts are in substantial accord. That in the current case no sale of the corporate lands was to be had and no development thereof for profit earning was proposed, while in the *Enz* case the lands were used for farming · operations, seems to emphasize the conclusion that the testator intended that his wife should have the dividends declared from profits made on sales of lands in her lifetime rather than that such profits should augment the principal of the trust estate. Why should he advise her to keep her own stock unless he deemed it a source of potential profit to her? If he expected that she would profit from the ownership of the stock presumably he intended that she rather than the remaindermen should profit from dividends paid to the trust estate.

We give effect to the intention of the testator as ascertained from the will by holding that the dividends should go to the widow as profits and not to the remaindermen as capital.

As to the apportionment of the proceeds of sales of unproductive real estate between the life tenant and the remaindermen, there has been no conclusive adjudication of the Surrogate's Court in this proceeding as contended by the appellant. The determination made by the intermediate decree of 1915 is not binding as to the ultimate rights of the parties. (*Rudd* v. *Cornell,* 171 N. Y. 114, 129, 130.) We, therefore, proceed to consider it as an original proposition.

The general rule is that the capital of a trust fund should not be impaired by carrying charges unless the

intent of the donor may clearly be inferred. (*Matter of Albertson*, 113 N. Y. 434.) This follows from the usual purpose of the testator to give the beneficiary the net income and to preserve the *corpus* intact until the termination of the trust. The reasonableness of the rule as applied to productive property permits no question.

In cases of unproductive lands held in trust, apportionments have been made between income and principal of the purchase price when such lands are sold. (*Lawrence* v. *Littlefield, supra; Spencer* v. *Spencer*, 219 N. Y. 459; *Furniss* v. *Cruikshank*, 230 N. Y. 495.) These cases rest on the assumption that the testator did not intend to impoverish or hamper the life tenant with carrying charges for the benefit of the residuary estate.

Difficult it is to distinguish in principle these cases from the case before us although the facts are not always identical. The distinction rests not wholly on the failure of other income to support the life tenant and the inference from that fact that testator would not leave the life tenant penniless, for in *Furniss* v. *Cruikshank* (*supra*) the net income of the beneficiary was adequate for her support in comfort. The inference that Mr. Jackson did not intend that his wife's income should be impaired for fifteen years by bearing the heavy carrying charges of the unproductive real property or that on a sale the entire proceeds should go to the residuary estate is equally permissible although she was otherwise amply provided for. The distinction does not rest on the lack of " words of the most unmistakable import " calling for such an apportionment (*Matter of Albertson, supra*, p. 440), for the decisions in the cases cited rest on the implied intention of the testator. " It is not to be assumed that a testator intends that a provision of income for a life beneficiary shall be rendered nugatory by delay " was the argument which prevailed in *Lawrence* v. *Littlefield* (*supra*, p. 569). The corollary that " unequivocable direc-

tions to the contrary " alone will justify an exception to the rule (*Matter of Albertson, supra*) was, in *Spencer* v. *Spencer* (*supra*, p. 465), made to yield to the implied intention of the testator, and in *Furniss* v. *Cruikshank* (*supra*) the intention of the testator that the life tenant should be made good for lost income due to delay in selling the trust lands was readily discerned from the situation of testator's property at the time of his death, the condition of the beneficiaries and the circumstances surrounding the execution of the will. " It was the testator's intention that when the sale was made in the future she [the life tenant] should be thereafter entitled to whatever income the trust fund should yield and that as to the past she should be equitably recompensed for the period of abstinence " (p. 510).

In *Edwards* v. *Edwards* (183 Mass. 581) the court said, in giving delayed income to the life beneficiary on the sale of unproductive land:

" In the present case the testator obviously intended that the entire property should be converted into one fund, and that the unproductive and speculative investments which he had at the time of his death should be changed without unreasonable delay. * * *.

" It was, therefore, the duty of the trustees to convert this property into an income-producing fund, and this they did according to their best judgment and discretion. The testator is presumed to have expected that some time would be required to accomplish this. At the same time, he is presumed to have intended that the rights of the life tenant to income should be ascertained on the creation of the fund, as if the fund had come into existence immediately after his death.

" * * * The rule is applicable as well when the delay in converting the property is necessary as when it is caused by the voluntary act or default of the trustees " (p. 583).

The language of the *Edwards* case is pertinent here.

While authorities are not controlling, they indicate a liberalizing of the rule which thwarted the testator's probable purpose by loading carrying charges of unproductive real property upon the life tenant although such tenant was obviously the first object of his solicitude so long as she lived.

Mr. Jackson plainly directed a sale of his real estate by his trustee for the purpose of making a final distribution of the estate and authorized the sale of his unproductive real estate at any time. His design was that the real property should be sold, with discretion only as to the time of sale. (*Furniss* v. *Cruikshank, supra.*)

The distinction between this case and cases where there is no imperative power of sale or equitable conversion; where the testator *directs* the trustees to sell *only* in their discretion and where it is, therefore, said that the only inference is that testator intended to benefit the principal of his estate (*Furniss* v. *Cruikshank, supra,* p. 500) may not ultimately prevail.

The orders of the Surrogate's Court and the Appellate Division should be reversed so far as appealed from and the proceeding remitted to the Surrogate's Court to render a final decree, after making a proper apportionment between capital and income of the sale price of the unproductive real estate in accordance with this opinion, with costs in all courts to all parties appearing and filing briefs, payable out of the estate of Theodore F. Jackson, deceased. (See 258 N. Y. 610.)

CRANE, O'BRIEN and HUBBS, JJ., concur with POUND, J.; CARDOZO, Ch. J., LEHMAN and KELLOGG, JJ., dissent as to the dividend declared by the Vandervoort Realty Company and in other respects concur.

Ordered accordingly.