In the Matter of the Estate of ANTONIN CHAPAL, Deceased.*

Surrogate's Court, Nassau County, December 14, 1934.

* Modfd. and affd., 245 App. Div. 818; order of Appellate Division revd. and decree of surrogate modfd. and affd., 269 N. Y. 464.

*Olvany, Eisner & Donnelly,* for George W. Olvany and Richard A. Corroon, as trustees.

*Edward B. Schulkind,* for Francoise Chapal, mother of decedent.

*Stoll & Lynde,* for Francoise N. Hepworth, daughter of decedent.

HOWELL, S. The testator's will provides as follows:

" All the rest, residue and remainder of my estate, of whatsoever nature, and wheresoever situated, I direct my executors, hereinafter named, to divide into two equal parts or shares, and I direct that my said executors hold one of such shares, in trust, and collect the rents, profits and income thereof, and apply the same to the use of my wife, Blanche Chapal, so long as she shall live, and upon her decease, I give, devise and bequeath seventy-five (75%) per cent of said share of my residuary estate to my daughter, Francoise, and twenty-five (25%) per cent to my step-son, Robert Irving Chapal.

" The remaining one-half of my residuary estate I direct my said executors to hold and to apply the rents, profits and income thereof to the use of my daughter, Francoise, so long as she shall live, and upon her decease, I give, devise and bequeath such one-half share

to the issue of my said daughter, Francoise, surviving her equally *per stirpes.*

" In the event that my daughter predecease my wife, leaving no issue, I direct that the income of this one-half share of my residuary estate be applied to the use of my wife so long as she shall live.

" In the event that my daughter should die without issue her surviving, I give, devise and bequesth the remaining share of my said residuary estate after the trusts created by the foregoing paragraph of this, the Second Article of my Will have terminated, as follows:

" One-fourth unto my step-son, Robert Irving Chapal, and the balance of said one-half of my residuary estate I give, devise and bequeath to my heirs at law."

At the time of the making of the will and at testator's death there were living the testator's wife, Blanche Chapal, his daughter, Francoise, his mother, Annette Chapal, and a stepson, Robert I. Chapal. The testator died July 15, 1928. His wife, Blanche Chapal, died November 12, 1931. His mother is still living as is his daughter Francoise, who is married but has no children. (Provisions of opinion as to construction of will omitted.)

The executors and trustees request this court to instruct them concerning the allocation of income received and expenses incurred in the administration of real property taken in by them upon fore-closure of mortgages which formed a part of the corpus of the trust for the benefit of testator's daughter.

It appears from the petition that the appraised value of the corpus of that trust was $598,641.28, and that it consisted entirely of cash, notes, accounts receivable, stock, bonds and mortgages, with the exception of real estate at Central Park in Nassau county, N. Y., having an appraised value of $35,750, and that the average annual earned income therefrom during the four years 1930 to 1933, both inclusive, was approximately $17,000; that such income has been materially reduced during the year 1934 because the trustees have been obliged to foreclose certain mortgages con-stituting a part of the corpus of the trust and to take in the real property itself upon such foreclosures; and that several other such mortgages are now in process of foreclosure, with similar results expected. The properties thus taken in upon foreclosure are being operated by the trustees, pending sale thereof. Treating each such property separately, as standing in place of the mortgage foreclosed upon it, one is presently producing sufficient income to pay carrying charges and show a surplus, while another produces no income at all. The question presented is whether, if a particular property produces no income, or insufficient income to meet carry-

ing charges, the latter should be paid out of income accruing from the other securities making up the corpus of the trust for the daughter, or whether they should be paid out of the capital of that trust.

This subject has been rather thoroughly treated by the Court of Appeals in recent years. It was presented in a series of three cases: *Lawrence* v. *Littlefield* (215 N. Y. 561); *Spencer* v. *Spencer* (219 id. 459); *Furniss* v. *Cruikshank* (230 id. 495).

The general rule had early been settled that the capital of a trust fund should not be impaired by carrying charges unless the intent of the testator to so charge it might clearly be inferred. (*Matter of Albertson*, 113 N. Y. 434.) This principle was deduced from the fact that the usual purpose of a testator was to give to the beneficiary of a trust the net income only and to preserve the capital intact. Unquestionably, this rule was reasonable as applied to productive property. However, even before the Court of Appeals in the cases above cited had treated the subject anew, the question of the applicability of the rule to unproductive real property had frequently been raised and passed upon; and in certain decisions, irrespective of the doctrine of equitable conversion or consideration of testator's intent or of the proportion of the unproductive property to the productive property included in the trust, it had been held that where unproductive real property was carried in order to sell it at a better advantage, carrying charges should be paid out of capital. (*Matter of Martens*, 16 Misc. 245; *Matter of Coombs*, 62 id. 597; *Matter of Montgomery*, 99 id. 473; *Matter of Vermilye*, 100 id. 235; *Matter of Pitney*, 113 App. Div. 845; *Matter of Lichtenberg*, 114 Misc. 89.)

In *Lawrence* v. *Littlefield* (*supra*) all the considerations above mentioned were present. The will contained an imperative power of sale which effected an equitable conversion of the real estate into personalty; the unproductive real estate constituted almost the whole of the capital of the trust, leaving very little productive property for the benefit of the life beneficiary, with the result that if carrying charges were to be borne by such beneficiary, the provision for her benefit was rendered nugatory. The unproductive real estate was carried for some time and then sold. The court held that there was an equitable conversion under the will, that the intent of the testator was to provide for the life beneficiary, and that the proceeds of the sale should be apportioned between capital and income. In that case, however, the power of sale being imperative, there was unquestionably, an equitable conversion of the unproductive realty at testator's death and consequently as a matter of

law, an immediate income producing fund from which the life tenant might benefit.

So, too, in *Spencer* v. *Spencer* (*supra*), unproductive real estate constituted a very large part of the capital of the trust and payment of the carrying charges thereon out of income left very little income available for the life beneficiary. Although there the power of sale was not specifically imperative, it was held by the court that under the circumstances indicating the testator's intention, an imperative power might well be implied and an equitable conversion effected. It was there held that the carrying charges of the unproductive real estate should be paid from capital and not from income.

Although in both those decisions the determination might be based upon the express or implied existence of an imperative power of sale effecting an equitable conversion, nevertheless it is a fact that in both cases the payment of carrying charges out of income would have rendered nugatory the testator's clear intent to provide for the life beneficiary, for the reason that the unproductive real estate constituted such a large part of the corpus of the trust that the life beneficiary, if carrying charges thereon were paid out of income, would receive little or no income.

In *Furniss* v. *Cruikshank* (*supra*) the situation was somewhat different. Although the power of sale in the will was not specifically imperative but on the contrary discretionary, it was held by the Court of Appeals under the circumstances that the discretion related only to the time of sale and that an imperative direction to sell with the consequent equitable conversion should be implied. Furthermore in that case, although the unproductive real estate in the trust considerably exceeded in value that of the productive real estate, there was, nevertheless, sufficient productive real estate to produce for the life beneficiary a net income of approximately $12,000, which was likely to increase as time passed. Nevertheless, the court concluded that it was the intention of the testator to effect an equitable conversion of his real estate and that consequently the proceeds of the sale of the unproductive real estate should be apportioned between capital and income.

It would thus appear from those decisions that although the determinations rested upon the holding of the court in each case that an equitable conversion was effected, nevertheless, an important element in arriving at that conclusion was the fact that unproductive real estate constituted so large a part of the corpus of the trust fund as to largely deplete the life beneficiary's income if carrying charges were to be paid out of income. Such was the construction placed upon those decisions by Surrogate O'BRIEN in *Matter of Marshall* (136 Misc. 116), where the trust fund consisted of productive

property of more than $1,000,000 and unproductive real estate of only $45,000, with the result that the learned surrogate held that the proceeds of sale of such unproductive real property should not be apportioned between capital and income under the decisions of the Court of Appeals above referred to.

However, in its more recent decision on the subject (*Matter of Jackson*, 258 N. Y. 281), the Court of Appeals has, in my opinion, gone a step farther. The testator there created a trust for the benefit of his wife for life with remainder over to collaterals. The wife had property of her own of the value of more than $86,000. In addition to her interest in the trust, she took under her husband's will real and personal property at Southampton, Long Island, $150,000 in cash and 160 shares of stock in a real estate corporation. The capital of the trust amounted to $542,690, approximately one-third of which consisted of unproductive real estate. By the will testator authorized his trustee to sell at any time in its discretion, any of his unproductive real estate, convert the same into money and invest the proceeds. The Court of Appeals held that the language thus used was similar to that construed in *Lawrence* v. *Littlefield* (*supra*) to constitute an imperative power of sale and an equitable conversion of the real estate into personalty at testator's death. In the meantime and before the unproductive realty had been sold, the surrogate had decreed that the carrying charges thereon should be charged against principal. It was thereafter sold and the Court of Appeals held that the proceeds of sale should be apportioned as between capital and income. Referring to *Lawrence* v. *Littlefield*, *Spencer* v. *Spencer* and *Furniss* v. *Cruikshank* (*supra*), the court said that those cases rested upon the assumption that the testator did not intend to impoverish or hamper the life tenant with carrying charges for the benefit of the remaindermen and in principle those cases could not well be distinguished from the *Jackson* case; and that such distinction rested not wholly upon the failure of other income to support the life beneficiary, because in the case of *Furniss* v. *Cruikshank* (*supra*) the net income was quite adequate to support the beneficiary in comfort; and that the inference that the testator did not intend that his wife's income should be impaired pending the sale of unproductive real estate was equally permissible although she was otherwise amply provided for. The court said: " While authorities are not controlling, they indicate a liberalizing of the rule which thwarted the testator's probable purpose by loading carrying charges of unproductive real property upon the life tenant although such tenant was obviously the first object of his solicitude so long as she lived.

" Mr. Jackson plainly directed a sale of his real estate by his trustee for the purpose of making a final distribution of the estate and authorized the sale of his unproductive real estate at any time. His design was that the real property should be sold, with discretion only as to the time of sale. (*Furniss* v. *Cruikshank, supra.*)

" The distinction between this case and the cases where there is no imperative power of sale or equitable conversion; where the testator *directs* the trustees to sell *only* in their discretion and where it is, therefore, said that the only inference is that testator intended to benefit the principal of his estate (*Furniss* v. *Cruikshank, supra,* p. 500) may not ultimately prevail."

The words above quoted are significant. It indicates to my mind that the present attitude of the Court of Appeals on this subject is somewhat in line with the rule proposed to be established by various commissions to the effect that, unless the will contains directions to the contrary, the proceeds of sale of unproductive real estate will be apportioned in accordance with the rule applied in *Furniss* v. *Cruikshank* (*supra*). (See Uniform Principle and Income Act, Third Tentative Draft, Commission of Uniform State Laws, § 12; Restatement of the Law of Property, Preliminary Draft No. 33, § 164; Restatement of the Law of Trusts, Preliminary Draft No. 20, §§ 221, 222; 40 Yale Law Journal, p. 275, Dec. 1930; 9 North Carolina Law Review, p. 127, Feb. 1931.)

The decision in *Matter of Jackson* is also in line with the trend of the decisions in other jurisdictions. (See Annotation 17 A. L. R. beginning p. 1384; editorial N. Y. L. J., March 29, 1932, p. 1706, and decision of Minnesota Supreme Court, Feb. 19, 1932, *Minnesota Loan & Trust Co.* v. *Moore,* 185 Minn. 342; 241 N. W. 63, therein referred to.)

The question here presented has recently been considered by this court in *Matter of Satterwhite* and in *Matter of Gary* (not officially reported). In *Matter of Satterwhite* the testatrix gave to her husband the possession of the land and buildings known as " Martin Hall " at Great Neck, Nassau county, for his use and occupancy from the time of testatrix's death until the time when the same shall have been sold as provided in the will. She then directed her executors and trustees to sell that property within three years after her death for the best price and upon the best terms obtainable and to place the proceeds thereof in the residuary fund of her estate. In addition she authorized her executors and trustees to sell the whole or any part of her real property for any purpose they may deem necessary and upon such terms as they shall deem proper. She placed her residuary estate in trust in part for the benefit of her husband and in part for the benefit of others with

remainders over. Her personal estate was valued at approximately $5,000,000. The real property known as "Martin Hall" was appraised at $970,000. The testatrix died May 1, 1927. "Martin Hall" was not sold until September 27, 1930. Upon the basis of appraised value, the unproductive real estate constituted between one-fourth and one-third of the total estate and of the total amount of the residuary estate. This court held that the power of sale was imperative as to "Martin Hall," but that, in view of the specific provision giving the husband the possession, use and occupancy thereof until it should be sold, an equitable conversion was not effective until the actual sale thereof or until the expiration of three years from the time of testatrix's death, whichever event should first occur. Consequently the decision of this court was that the carrying charges of "Martin Hall" during the three years following testatrix's death were chargeable to income, but that thereafter, and until the time of sale they were chargeable to capital, and that the proceeds of sale should be apportioned as between capital and income. This decision was affirmed by the Appellate Division (*Matter of Satterwhite*, 236 App. Div. 684), and by the Court of Appeals (*Matter of Satterwhite*, 262 N. Y. 339).

In *Matter of Gary* the testator gave his widow a life estate in the country estate of the testator, at Jericho, Nassau county, known as "Ivy Hall." He divided his residuary estate into three separate trusts, one for the benefit of his wife and two for the benefit of each of his two daughters with remainders over to the daughters' children. He further provided, however, that in case his wife should not use and occupy "Ivy Hall," or in case she should desire to surrender her life estate therein because the maintenance thereof should become burdensome to her, his executors and trustee should sell such premises provided it should be convinced that the price which could be obtained therefor was fair and reasonable, and the proceeds of sale become part of the principal of the trust created in the residuary estate for the benefit of the wife. Under that provision the widow elected to surrender her life estate in "Ivy Hall" upon the ground that its maintenance had become too burdensome to her. "Ivy Hall," therefore, became a part of the residuary trust. This court held that from the time of the surrender of the widow's life estate in "Ivy Hall" the carrying charges should be paid from principal and not from income. There was a further question, however, whether they should be paid from the principal of the widow's residuary trust or from the principal of the residuary trust generally. This court held that such carrying charges should be paid from the principal of the residuary trust generally thus equalizing the burden as between the widow and the two daughters, rather

than casting the entire burden upon the principal of the widow's estate.

The Appellate Division reversed the surrogate in that respect but held that the carrying charges of "Ivy Hall" should be paid not from income but from the principal of the widow's trust (236 App. Div. 687); the Court of Appeals reversed the Appellate Division and affirmed the surrogate (261 N. Y. 244).

In both those estates the decisions of this court were made prior to the decision of the Court of Appeals in *Matter of Jackson (supra)*. At the time of the review in the Appellate Division, however, *Matter of Jackson* had been decided. Nevertheless, in both cases, the Appellate Division and the Court of Appeals approved the action of this court in so far as it charged carrying charges against principal rather than income.

What then is the situation in the case now before me, taking into consideration the terms of the will, the condition of testator's estate and the surrounding circumstances?

Quite clearly the testator's wife and daughter (his only child) were the nearest and primary objects of his solicitude. His will indicates plainly his plan and intention to provide first for their support and comfort during their respective lives, for he leaves half of his residuary estate in trust for the benefit of his wife for life with remainder, in part, to his daughter only upon his wife's death, and the other half in trust for the benefit of his daughter for life, with remainder to her issue, or in default thereof, to his heirs. A portion of the corpus of the trust consisted of unproductive real property. He gave to his executors and trustees a power of sale over his real property, which, although not in terms mandatory or imperative, may well be construed as such by implication from analogy to the wills construed by the Court of Appeals similarly in the cases above cited. In the matter now before me, however, the real property involved is not real property left by the testator as forming part of the corpus of the trust; on the contrary, it was income producing personalty in the form of mortgages upon real property which have been turned into the form of more or less unproductive real property in the hands of the trustees due to foreclosure of the mortgages as a result of known existing conditions. It should still be considered as personalty for the purposes in question here, just as it would be considered as personalty for such purposes had it originally been unproductive real property equitably converted by reason of an imperative power of sale. Although so considered, it necessarily remains in fact real property until it can be sold, and in the interim the question of allocation of income and carrying charges must be met and determined.

Under the circumstances shown, and upon the authorities cited, which "indicate a liberalizing of the rule which thwarted the testator's probable purpose by loading carrying charges of unproductive real property upon the life tenant although such tenant was obviously the first object of his solicitude so long as she lived," it is my opinion that the life tenant's income should not be further curtailed, not only by loss of income due to the necessary substitution of unproductive real property in place of productive mortgages, but also by further encroachment upon remaining income to pay carrying charges of the unproductive real estate. Indeed this court so held upon a former application in this estate with reference to the unproductive real property at Central Park in Nassau county, N. Y., left by the testator and forming part of the corpus of the trust. That ruling would apply all the more forcefully to unproductive real estate brought into the corpus of the trust through necessary foreclosure of mortgages.

Indeed, where the question has arisen in exactly or substantially the same form as is presented here, i. e., when trustees have invested a portion of the corpus of the trust estate in mortgages which had to be foreclosed and the mortgaged property bought in by the trustees in the performance of their duties in preserving the trust fund property, and the property thus acquired proved unproductive, the courts have held that the carrying charges should be borne by the principal and should not be paid out of the income. (*Matter of Pitney*, 113 App. Div. 845; affd., 186 N. Y. 540; *Matter of Menzie*, 54 Misc. 188; *Meldon* v. *Devlin*, 31 App. Div. 146.)

With respect to real properties acquired through foreclosure of mortgages, therefore, the following method should be pursued:

A separate account should be set up upon the trustees' books of each separate parcel so acquired, and such account kept until that particular parcel is sold.

If the income of a particular parcel is insufficient to pay carrying charges, the trustees should pay the deficiency from the principal of the trust, and not from the income.

If the income of a particular parcel is more than sufficient to pay carrying charges, the trustees will be bound to exercise their own discretion and judgment upon the question of distributing such surplus income entirely, or retaining the same or some part thereof to meet possible subsequent deficiencies.

If such surplus exists in case of a particular parcel as to which the trustees have already taken funds from the principal of the trust to pay deficiencies, the trustees should reimburse the principal from such surplus income.

When any particular parcel is sold, the proceeds of sale should be properly allocated as between principal and income.

The reasonable expenses necessarily incurred by the trustees in the employment of accountants for the purpose of writing up and auditing the books and accounts of the trustees are in the same category as expenses incident to an accounting proceeding, such as counsel fees, costs and other disbursements. They are expenses of administration of the trust, should be borne by the principal of the trust fund and no part thereof taken from income. (*Matter of Petremont*, 213 App. Div. 318; affd., 241 N. Y. 586; *Matter of Eddy*, 207 App. Div. 162; *Matter of Scott*, 135 Misc. 661, 663; *Matter of Marvin*, Id. 899, 903; *Matter of Dimond*, 138 id. 648, 651; *Matter of Bechtoldt*, 148 id. 8, 14; *Matter of Williams*, Id. 14, 21.)