Dore, J.
These appeals present two issues:
1. Did the testator’s will contain a direction against apportionment of death taxes pursuant to section 124 of the Decedent Estate Law?
2. Were counsel fees in this accounting proceeding payable out of the estate to attorneys for the trustees of inter vivos trusts under section 278 of the Surrogate’s Court Act?
The testator, Ogden Livingston Mills, died October 11, 1937, leaving a net testamentary estate of over $7,900,000. Having no issue, he gave the bulk of his estate in a residuary clause establishing a trust for his wife for life with remainders in equal trusts for his stepchildren and a former ward.
*232 During his life the testator had established two trusts: one in 1932, which at death had a value of over $515,000; the other in 1935 having a value at his death of about $350,000. These two trusts provided that the income should be paid to the donor’s wife for her life and on her death remainders were given to the donor’s stepson or his issue. In 1930, the testator had also made a gift to a third trust of securities of the value at his death of $12,625; as trustee of this trust the testator during his life had the right at any time to terminate the trust and pay over the principal to the life beneficiary, the testator’s former ward, George Winthrop Sands.
A portion of the corpus of the three trusts was included by the taxing authorities in the testator’s taxable estate and the total death taxes on such portion amounted to over $132,000. The primary issue is whether such taxes should be paid out of testator’s residuary estate or apportioned against the inter vivos trusts.
The learned Surrogate held that the trusts must bear their share of the tax burden in. accordance with the provisions of section 124 of the Decedent Estate'Law, on the ground that there was no clear direction in the will against apportionment. He also' denied an application by the attorneys for the trustees of the 1929 and 1932 trusts for allowances for their services in the proceeding and from such denial the trustees of those two trusts appeal. From that part of the decree which charged and apportioned the taxes against the trusts, the trustees of the three inter vivos trusts and a special guardian for infants, issue of testator’s stepson, and also for such stepson as a party in military service, appeal contending that under article Eleventh of the will all of the death duties in question should be paid out of the residuary estate without apportionment.
I. Apportionment of Taxes under Section 124 of the Decedent Estate Law.
Article Eleventh of the will provides: “ Eleventh: I direct that all estate, inheritance, transfer and succession taxes imposed upon my estate or any part thereof, or the transfer thereof or any right of succession thereto, be paid out of my general estate.”
The general estate here means the residuary estate. ■
Section 124 of the Decedent Estate Law, so far as relevant provides that death taxes with respect to any property required to be included in the gross estate of the decedent “ except in a case where a testator otherwise directs in his will, * * * *233 shall be equitably prorated among the persons interested in' the estate to whom such property is or may be transferred or to whom any benefit accrues.” |
Construing this section, the Surrogate held that the direc-j tion against apportionment must be “ a clear direction ”; that, lacking clarity in the language of the will, the statute makes the rule, and apportionment should be directed; that at best the language of article Eleventh is obscure and, as no clear direction against apportionment was made, apportionment of the taxes against the trustees should be directed.
Section 124 of the Decedent Estate Law, is a statutory mandate to apportion unless the testator “ otherwise directs in his will.” Article Eleventh is indeed broadly inclusive as to the type of taxes involved but is expressly limited and qualified as to the kind of property referred to. The broad language relating to taxes is limited by the qualifying phrase “ imposed upon my estate.” The narrow issue is whether in referring to “ my estate ” in that clause of the will, the testator intended his true or testamentary estate or the artificial taxable estate. Elsewhere throughout the will testator used the words “ my estate ” a great number of times and in every instance he referred only to his true or testamentary estate.
The legislative history of the statute as well as its language indicates that apportionment is the rule to which exception is allowed only if there be clear direction to the contrary. The purpose of the statute is equitable and reasonable to provide that those who receive benefits should normally bear their proportionate burden of the, taxes and not impose them without clear direction on residuary legatees who are often the testator’s wife or children the natural objects of Ms bounty. We agree with the Surrogate to the extent of holding that the clause in question is at least ambiguous and in the absence of a clear and unambiguous direction against apportionment, the mandate of the statute must prevail.
The subsequent language in Article Eleventh “ or any part thereof,” or “the transfer thereof” etc. necessarily means part “ of .my estate ” and transfer “ of my estate.” These phrases carry the same limitation as to the hind of property referred to. As the numerous briefs indicate, it is at least arguable that testator was referring to his true or testamentary estate, not to an artificial tax estate which was deemed to include, solely by the mandate of taxing authorities, property the testator thought he had fully parted with long before his death.
*234 The briefs cite and analyze many cases involving tax provisions in other wills; few of such cases have received appellate consideration; it would unduly enlarge this opinion to discuss them seriatim; and in any event authorities are of little help as the intention expressed in a will depends ‘‘ upon the varying language used and the varying conditions surrounding the testator ” (Furniss v. Cruikshank, 230 N. Y. 495, 505).
The decision of this court in Matter of Halle (270 App. Div. 619, 623) heavily relied on by appellants, is not here applicable. As we there said: “ The matter of intention is to be determined in each case upon a consideration of the language used in the light of the surrounding circumstances.” In that case the decedent directed without any qualifying phrase or words that “ all inheritance, estate, transfer and succession taxes be paid out of my residuary estate. ’ ’ There the direction was unrestricted; there was no limitation such as that found in the will before us; viz., that the taxes so to be paid were only those imposed upon “ my estate ”, a phrase that had the uniform meaning throughout the will of the true or testamentary estate.
Keeping in mind the mandate of section 124 and the at least ambiguous language in article Eleventh, we think the entire will shows no clear intention to absolve the inter vivos trusts from apportionment of taxes. Especially is this so in the light of the law as it stood in 1935, when the will was drawn. The decedent had been a member of the New York bar and served from 1927 to 1932 as Undersecretary and from 1932 to 1933 as Secretary of the United States Treasury. In this capacity it was one of his duties to approve all Federal tax regulations, It was not until Helvering v. Hallock (309 U. S. 106, decided in 1940) and Matter of Pratt (262 App. Div. 240, decided in 1941) that the inclusion of principal of an inter vivos trust in a decedent’s artificial or taxable estate was finally settled. The testator died in 1937. The will should be read in the light of the law applicable when it was drawn and on the date of death (Matter of Duryea, 277 N. Y. 310).
Accordingly, we conclude that the taxes on the three trusts were properly apportioned as proposed by the accounting parties in the accounting approved by the Surrogate. On this, the main issue on appeal, the decree, so far as appealed from, should be affirmed.
II. Allowances under Section 278 of the Surrogated Court Act.
We think, too, the Surrogate properly denied the application for allowances. So far as relevant, section 278 of the Surro *235 gate’s Court Act provides that when a decree is made “ in a proceeding to construe a will ” the Surrogate in his discretion may allow any party to such proceeding counsel fees and their expenses. The attorneys for the trustees of the 1929 and the - 1932 trusts applied under this section for allowances for their services. The Surrogate denied the applications “ on the ground that the statute does not warrant such allowance on the issue decided by the court.” j
The power granted in the relevant portion of section 278, to make an allowance to “ any party ” is expressly limited by the language of the section to “ a proceeding to construe a will.” While the construction of the will was incidental and necessary in settling the account and determining the apportionment of taxes, this proceeding was not, as such, “ a proceeding to construe a will.” This was an accounting proceeding. The executors in their accounts set forth a schedule apportioning the death taxes against the inter vivos trusts and requested the court to approve such apportionment under section 124 of the Decedent Estate Law. Thus, they affirmatively took the position that article Eleventh applied only to property passing , under the will. The citation issued made no mention of any construction. The will, of course, was examined to see if testator had made a clear direction against apportionment, but that did not transform the proceeding from an accounting, - involving tax apportionment, into a “ proceeding to construe a will ”.
If allowances of counsel fees from general estate funds were to be made to parties in every proceeding that involved indirectly, incidentally, or in part the construction of a clause or a phrase in a will, estates would be unduly depleted and section 278 widened beyond the scope of its language or intent.
The representatives of the inter vivos trusts herein sought to impose upon the residuary legatees all death taxes on the. benefits which the trusts had received" independently of the will.In these applications for allowances, it is now sought to have the residuary estate pay the attorneys of trustees their counsel fees for this unsuccessful effort. By the decree appealed from, such attorneys are not barred from seeking fees from their own clients out of the large trust funds which the attorneys’ services were designed to protect. The fees should not be paid out of • the estate for such services.
The decree, so far as appealed from, should be affirmed, with costs to the respondents payable out of the estate..
*236 Martin, P. J., and Van Voorhis, J., concur; Callahan, J., concurs in all respects other than .the denial of the application for allowances, as to which he dissents.
Decree, so far as appealed from, affirmed, with costs to the respondents payable out of the estate.