Edward M. Horey, S.
The will of the decedent, Mary Ellen Bartley, previously admitted to probate on July 25, 1974, was dated and executed September 3, 1953.
The sole provision for the testatrix’ surviving spouse, Robert Bartley, are contained in paragraph fifth. That paragraph contains a bequest to him in the following terms:
"fifth. In the event that I am survived by my husband, Robert c. bartley, or by my said husband and any child or children, I give and bequeath unto my Trustees, hereinafter named, a sum equal to and not in excess of the minimum amount allowed to a surviving spouse pursuant to the provisions of the New York State Decedent’s Estate Law at the time of my death relative to the right of election of such spouse to take his or her share of the estate as in intestacy, in trust, nevertheless, for the use and benefit of my husband, Robert C. Bartley, as follows:
"A. Such Trustees shall collect and receive all of the interest and income from said trust fund and from the investments constituting the same, and from the interest and income of the funds held in trust they shall pay to my said husband, Robert C. Bartley, all of the interest and income from his trust fund quarter-annually for and during the term of his natural life.
"B. Upon the death of my said husband the entire corpus of his trust, together with any unpaid interest and income, shall be paid over, absolutely and forever, in equal shares, to any of my children then surviving whose trust fund or trust funds shall not have vested, as hereinafter provided; in the event that any child of mine may have died prior to my decease, or during the administration of the trust herein created for the benefit of my husband, Robert C. Bartley, leaving issue him or her surviving, I direct that such deceased child’s share shall be paid over absolutely and forever to his or her descendants in equal shares per stirpes and not per capita, that is to say, that the descendants of any child who has died, as aforesaid, shall *674 receive among them, equally, the share which their parent would have taken if living; and in the event that all my children shall predecease me or die during the administration of the trust herein created for the benefit of my said husband, leaving no issue them surviving, I direct that upon the death of my said husband the entire corpus of his trust fund, together with any unpaid interest and income, shall be paid over absolutely and forever, in equal shares, unto my nephews, james e. booth and Wellington m. booth, jr., and my niece, barbara p. booth, all of Arlington, Virginia.”
The surviving spouse timely filed a right of election under EPTL 5-1.1. The executor by petition now prays that this court determine the validity and effect of that right of election.
Relevant to necessary considerations are the factual allegations of the petition: (1) that the decedent was survived by two issue; (2) that the net estate of the decedent will exceed $100,000. No information relative to ownership, or interest of the decedent in real or personal property is set forth. Thus, it is impossible to state whether or not she left testamentary substitutes within the meaning of EPTL 5-1.1.
The court is of the opinion that the starting point for decision is one of construction of paragraph fifth. This is for the reason that if the bequest contained therein equals or exceeds the property obtainable through the exercise of the filed right of election, then there is no right of election to the surviving spouse and the instrument seeking it is a nullity.
Since the subject bequest by its express terms is in the nature of a formula bequest and is to be measured by the amount of property recoverable through the exercise of a spouse’s elective rights, the construction of paragraph fifth will necessarily involve considerations of all possible applicable elective rights provided a spouse by statute.
However, the initial determination must be one that by construction determines what was bequeathed by the testatrix to her spouse under her will. The initial determination is not merely one that is judicially decisive of which particular elective-right statute is applicable to the right of election that has been filed. The briefs of counsel are obscure on this point. The difference in procedural approach may be subtle, but it is nonetheless important. This is for the reason that in construction of a will the intention of the testatrix is the first and chief object, the primary question. (Matter of Ambrose, 58 NYS2d 614; Matter of Grad, 51 Misc 2d 289.) When ascertained it must prevail and be effectuated. (Matter of Buechner, *675 226 NY 440; Matter of White, 48 Misc 2d 990, revd on other grounds 20 NY2d 791.)
A primary canon of construction is that the intention of a testator as expressed in the language of his will should prevail over artificial rules of construction. (Matter of Crouse, 244 NY 400.) Thus, the initial endeavor of this court is to ascertain the testatrix’ intention by studying the language used in her will. The controverted provision is paragraph "fifth” previously quoted. The particular words and phrases which are in dispute in that paragraph are "minimum amount” and "at the time of my death”. They are examined in order.
The word "minimum” may have equivocal meaning. Depending upon the context in which it is employed, it may connote a limitation that is a floor, or one that is a ceiling. In some instances "minimum” is properly construed to mean the least quantity assignable, admissible or possible in a given case. (Board of Educ. of City of Rockford v Page, 33 Ill 2d 372.) In other instances the word "minimum” when used, for example, in reference to water rates, - damages or wages is properly construed to mean that the rates, damages or wages shall be viewed as not less than a stated figure. (See, e.g., City of Mount Vernon v New York Inter Urban Water Co., 115 App Div 658, 660-661.)
To urge, as the executor does in the case at bar, that the use of the word "minimum” as employed in paragraph fifth of the decedent’s will delimits the bequest to the least amount possible under any circumstances is to ignore the other qualifying language which precedes the word "minimum”. The bequest was not one of the minimum allowed by a referenced statute; rather it was of a "sum equal to and not in excess of the minimum amount” allowed by such statute. Equivalency and not paucity is the thought gleaned by the court from the language employed. Thus, the court construes the first portion of the bequest as merely a direction that there be set over to her surviving husband, in trust, an amount equivalent to a spouse’s elective share.
In support of this facet of construction, it is noted that at the time of the execution of the will (1953) there was only one amount provided by statute for an elective share. (See Decedent Estate Law, § 18.) Such amount represented both a minimum and a maximum. The court views the language of "a sum equal to and not in excess of the minimum amount allowed to a surviving spouse pursuant to the provisions of the *676 * * * Decedent’s Estate Law” as merely the means employed by the testatrix to describe a bequest of an elective share. Viewed in this light, the result would not have been different if the testatrix had used the word "maximum” instead of "minimum” and had bequeathed "a sum equal to and not in excess of the maximum amount allowed to a surviving spouse pursuant to the provisions of the Decedent Estate Law”.
It is the additional qualifying phrase of the bequest "at the time of my death” that causes principal concern. A determination of its meaning constitutes an additional facet of the construction proceeding.
The court is of the opinion that in employing the phrase "at the time of my death” the testatrix provided for an alterable standard by which the quantum of the bequest was to be measured. Changes in the law affecting the extent of the elective rights were to be given continuing effect as they were enacted until the death of the testatrix. That change in the law that was extant at the time of her death would fix the standard to be applied in measurement of the bequest. Thus, if the statutory provisions were changed between the date of execution of the will and the date of death to reduce the amount of a spouse’s elective share there was to be a reduction of the bequest to correspond to the change. Contrariwise, if there was an increase in the amount of a spouse’s elective share by virtue of statutory change there was to be an increase of the bequest to correspond to the change.
As a matter of simple equity the court is satisfied that if reduction had resulted from legislative change, the executor would be urging the court, and properly so, to apply the changed standard and award the surviving spouse the reduced amount. No good reason suggests itself as to why statutory change for an increase in benefits should not be applied.
The argument of the executor on this score, however, is that there has been no statutory change in the amount of the elective share applicable to the testatrix’ spouse. This he urges is because of the special provisions of EPTL 5-1.1 (subd [a]) which relate to wills drawn prior to September 1, 1966.
The court is of the opinion that the legislative history of the present statutory right of election does not support the argument. EPTL 5-1.1 (subd [a]), which the executor urges, limits the elective share of a spouse under wills drawn prior to September 1, 1966 to one third of the net estate if the decedent is survived by one or more issue and in all other *677 cases one half of such net estate. It also provides that where the surviving spouse receives a life estate under the decedent’s will, the corpus of which is equal in amount to the full elective share, the spouse has the limited right to withdraw $2,500 outright with the balance of the trust remaining effective. The benefits under EPTL 5-1.1 (subd [a]) are the same benefits provided under section 18 of the former Decedent Estate Law.
In marked contrast to the amount of an elective share provided a spouse under wills drawn prior to September 1, 1966 are those provided a spouse under wills drawn after that date. For the purpose of an election as to such wills, EPTL 5-1.1 (subds [b], [c]) permit a surviving spouse to share not only in the net estate of a decedent, but also in an estate consisting of several inter vivos transactions, testamentary in nature, which were formerly not included in computing the elective share. EPTL 5-1.1 (subd [b]), entitled "Inter vivos dispositions treated as testamentary substitutes for the purpose of election by surviving spouse” provides that gifts causa mortis, Totten trusts, joint accounts with the right of survivorship, property held as joint tenants with a right of survivorship, or as tenants by the entirety, revocable transfer, or transfers subject to invasion or disposition of principal, which were established during marriage and after August 31, 1966 and whether benefiting the surviving spouse or any other person, shall be treated to the extent of the decedent’s contribution as "testamentary substitutes” and shall be included in the decedent’s net estate, together with the assets disposed of by the will, for the purpose of fixing the base on which the surviving spouse’s elective share shall be computed. (See excellent article, Arenson, Surviving Spouse’s Right of Election and Its Application to Testamentary Substitutes, 20 New York Law Forum 1, 9-10.) EPTL 5-1.1 (subd [c]) further stipulates that where the surviving spouse receives a life estate under the decedent’s will, the corpus of which is equal in amount to the full elective share, the spouse is entitled to withdraw $10,000 from the trust corpus and the balance of the trust shall remain effective.
By adding to the right of election the right of a spouse to treat and reach for elective purposes a decedent’s contribution in the statutorily denominated testamentary substitutes as well as decedent’s net testamentary estate, it is readily comprehended that the elective right of a spouse was substantially *678 enlarged and extended by the enactment of EPTL 5-1.1. The limited right to take in Cash a portion of the testamentary bequest in trust to a surviving spouse was also enlarged from a right to take $2,500 to $10,000 by that statute.
The extension and enlargement of elective rights of a surviving spouse and the corresponding increase in such spouse’s elective share was the result of legislation proposed by the Temporary State Commission on the modification, revision and simplification of the law on estates and subsequently adopted by the Legislature. It was social legislation designed to prevent the ease with which a decedent could impoverish a surviving spouse. Mr. Rohan refers to the provisions as "loophole closing measures”. The statutory enactments were calculated to give to a surviving spouse a legislatively determined equitable portion of a decedent’s property. (See 9A Rohan, NY Civ Prac, par 5-1.1, subds [2], [5], [8]; see, also, Arenson, Surviving Spouse’s Right of Election, 20 New York Law Forum, 1, 2.)
The legislative history of the increase of the limited right of election from $2,500 to $10,000 was a part of the social legislation. In making its recommendation to the Legislature the commission said: "it seems apparent that a withdrawal privilege limited to $2500 is woefully inadequate”. After noting that its original recommendation of a withdrawal privilege of $25,000 had been objected to on the grounds that such an amount would impair larger trusts that would yield adequate income for a surviving spouse, the commission noted that the majority of decedents did not leave trusts of substantial sums and accordingly recommended that the withdrawal privilege be increased from $2,500 provided under section 18 of the Decedent Estate Law to at least $10,000 to provide adequate benefits in our present economic society. (See Third Report of the Temporary State Commission on the Law of Estates, 1964, pp 216-217.)
In view of the purposes to be accomplished by extending the elective rights of a spouse, the obvious question is why would the commission recommend and the Legislature adopt a scheme that would preserve benefits for a spouse determined to be inadequate when wills drawn prior to September 1, 1966 were involved.
The reason that exception was made for wills drawn prior to September 1, 1966 was the lingering doubt of the Temporary Commission that the new testamentary substitutes doc *679 trine might run afoul of the due process provisions and be held unconstitutional if made applicable to situations in which the testator’s will antedated the effective date of the statute, September 1, 1966. (See 9A Rohan, NY Civ Prac, par 5-1.1, subd [4], cl [b].) In noting its refusal to recommend a single right of election, the commission said: "While the enactment of such a statute would be much easier to draft, would simplify the law and would prevent non-probate testamentary assets from escaping the right of election, such enactment would seriously interfere with property settlements which have now been made in good faith and in many cases might be unconstitutional if rights which have now vested in recipients of testamentary provisions were divested by the statute.” (Fourth Report of the Temporary State Commission on the Law of Estates, 1965, p 152.)
To conclude that it was in the contemplation of the testatrix that the general changes in elective rights of a spouse would be delimited by special statutory enactment dealing with the execution of a will and that exception prompted by constitutional considerations is unreasonable. Such a conclusion would pass the parameters of intention and enter those of soothsaying. Even the learned probate solons on the commission which proposed the exception now found in EPTL 5-1.1 (subd [a]) were unaware of the constitutional problems until after considerable study had been had and were still uncertain of the need of an exception to solve it. The excepting provision was reluctantly inserted only as a hedge against the possibility of a determination of unconstitutionality. (See 9A Rohan, NY Civ Prac, par 5-1.1, subd [4], els [a], [b] and Third Report of the Temporary State Commission on the Law of Estates, 1064, pp 224-225.)
Texts and case decisions are replete with statements and determinations that statutes granting to a spouse a right of election are remedial and should be construed in the interest of the surviving spouse to give him or her the broadest possible protection. (See Matter of Burnes, 260 NY 465; Matter of Fike, 59 Misc 2d 1047; 14 NY Jur, §§ 156,157.)
As the court has attempted to demonstrate, the legislative purpose of enacting the new provisions of EPTL 5-1.1 (subds [b], [c]) was to effect an increase in the share of the surviving spouse, continuing to compensate such spouse for the loss of dower and curtesy, but providing even greater protection against a careless, disgruntled or penurious husband or wife. *680 No authority is needed for the proposition that a construction of a will which furthers the legislative purpose of a statute is proper. When the general purpose of the statute is contained in two subdivisions and such purpose is eroded by one special delimiting subdivision of the same statute, what then is proper? Viewing EPTL 5-1.1 in its entirety and considering that the purpose to be accomplished by its enactment was an expansion of elective rights of a spouse, the court is of the opinion that a construction is to be preferred that favors those subdivisions which provide for such expansion over a subdivision that defeats the general purpose to be accomplished. This is especially true when it appears clear that the delimiting subdivision was reluctantly inserted as a hedge to protect and further the statutory purpose expressed in the other two subdivisions.
It has been held that provisions of a will are generally to be construed liberally in favor of the spouse of the decedent. (Matter of Moss, 230 App Div 741; Matter of Snowden, 235 App Div 862; Matter of Kavanagh, 133 Misc 399, Matter of Mills, 148 Misc 224; and see 27 Carmody-Wait 2d, NY Practice, § 162:28.) A construction favoring the application of subdivisions (b) and (c) over subdivision (a) of EPTL 5-1.1 would be consistent with such a rule. Further, some practical financial benefit would accrue from such preference to the other legatees and distributees of the decedent’s will. Here, the elective share to the surviving spouse does not qualify for the estate tax marital deduction. Failing to give the spouse the right of appointment, his life interest in the trust constitutes a terminable interest. Further, the will contains no direction against apportionment. As a consequence, the elective share of the spouse must contribute its proportionate amount of taxes. (See 9A Rohan, NY Civ Prac, par 5-1.1, subd [11].) Thus, any increase in the amount of the elective share will bear a corresponding increase in the amount of tax contribution by the surviving spouse.
For all of the reasons the court reaches the determination that the proper construction of paragraph fifth of the testatrix’ will is that it contained a bequest of an elective share to be computed under the provisions of EPTL 5-1.1 (subd [c], par [1], els [B], [C]). Thus, it shall include a portion of the net estate (EPTL 5-1.1, subd [c], par [1], cl [B]) and transactions, if any, described as testamentary substitutes (EPTL 5-1.1, subd [c], par [1], cl [C]). Since the bequest so construed and deter *681 mined equals the interest in property which the surviving spouse could obtain through the exercise of a right of election, the right of election filed with the court is a nullity so far as altering the amount of property which will pass to the surviving spouse. However, since the bequest in paragraph fifth was in trust to the surviving spouse, the court holds that the right of election shall be treated as a limited right of election under EPTL 5-1.1 (subd [c], par [1], cl [D]), according to the surviving spouse the limited right to take $10,000 absolutely from the principal of such trust.